# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 21, 2016       Decided March 14, 2017

No. 16-5034

MATTHEW A. GOLDSTEIN, PLLC,
APPELLANT

v.

UNITED STATES DEPARTMENT OF STATE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-00311)

*Matthew A. Goldstein* argued the cause and filed the briefs for appellant.

*Katherine Twomey Allen*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *H. Thomas Byron, III*, Attorney.

Before: GRIFFITH, SRINIVASAN, and MILLETT, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: The plaintiff is a law firm that advises clients on U.S. law that regulates the international arms trade. Concerned that the State Department might enforce arms-control regulations against it in a way that would force disclosure of confidential client information, the law firm seeks declaratory and injunctive relief. The district court dismissed the action for lack of standing and ripeness. We affirm on the ground that the plaintiff lacks standing to bring a pre-enforcement challenge because it faces no credible threat of enforcement.

## I

### A

The Department of State regulates international arms brokering under the Arms Export Control Act and the International Traffic in Arms Regulations (ITAR). In the interest of national security, the Act authorizes the President to designate various weapons and technologies as "defense articles" and to regulate their import and export. 22 U.S.C. § 2778(a)(1). All weapons or technologies so designated are placed on what is known as the United States Munitions List, *see id.*, which currently includes items such as ballistic missiles, rockets, bombs, mines, tanks, and military submarines.

The Act requires those who manufacture, import, or export these defense articles to register with the U.S. government, *see id.* § 2778(b)(1)(A)(i), according to procedures prescribed by the ITAR, *see* 22 C.F.R. §§ 120-130. The Act also requires that those seeking to finance, transport, or assist in the manufacturing, export, or import of defense articles—*i.e.*, brokers—register with the State Department and obtain

departmental approval before engaging in brokering activities. *See* 22 U.S.C. § 2778(b)(1)(A)(ii)(I)-(III).

Part 129 of the ITAR governs these brokers. Before a person may be approved to engage in brokering activities, he must disclose to the State Department certain information, including the specific activity he intends to undertake; the name, nationality, address, and place of business of those involved; a description of the defense article at issue; the defense article's destination; and what the defense article will be used for. *See* 22 C.F.R. § 129.6(a)-(b). Registered brokers must also file annual reports with the State Department and maintain records related to their brokering activities. *Id.* §§ 129.10-11.

As relevant here, in 2013 the State Department promulgated a rule to clarify that "brokering activities" include "[s]oliciting, promoting, negotiating, contracting for, arranging, or otherwise assisting in the purchase, sale, transfer, loan, or lease of a defense article or defense service," *id.* § 129.2(b)(1)(ii), but exclude "activities by an attorney that do not extend beyond the provision of legal advice to clients," *id.* § 129.2(b)(2)(iv). The preamble to the rule elaborates that "'legal advice' includes the provision of export compliance advice by an attorney to a client." Amendment to the International Traffic in Arms Regulations, 78 Fed. Reg. 52,681, 52,681 (Aug. 26, 2013). According to the State Department's website, legal advice that is not considered a brokering activity would also include

> [a]dvising on the legality of a transaction, such as advising whether a transaction is ITAR compliant, tax rates or other laws may be preferential, drafting of contract terms where parties to the transaction have already been

> identified by the client, representing [a] client to a client-identified foreign party, conducting ITAR audits, and/or providing training or assistance with ITAR compliance procedures.

J.A. 103-04. Not all actions taken by attorneys are exempt from the regulations, however. If attorneys

> engage in activities that go beyond providing consulting or legal advice, including being a third party to the transaction, or . . . [if they] engage[] in soliciting, locating a buyer or seller, introducing or recommending specific parties, structuring the transaction, marketing, promoting, and/or negotiating ITAR-controlled defense articles and services on behalf of their clients beyond contract terms of already identified foreign parties by [their] client, then such activities may constitute brokering activities under ITAR.

22 C.F.R. § 129.9.

The State Department has established an optional process under the ITAR for requesting an official determination on whether a particular activity constitutes brokering. *See id.* Submitting such a request requires providing essentially the same information needed to obtain approval for a brokering activity, including the specific activities to be undertaken

and identities of all the parties involved. *Id.* § 129.9(a)(1)-(4).[1]

B

Matthew A. Goldstein is the principal attorney in a law firm that bears his name and specializes in providing legal advice to clients involved in transactions subject to the ITAR. Goldstein attests that his firm "regularly represents clients in the preparation of the terms and conditions of sale, user agreements, vendor certifications, and other legal documents" for ITAR-related transactions. J.A. 51-52. According to Goldstein, his firm's clients often have not identified the foreign parties that will be involved in prospective transactions at the time the firm provides its legal advice.

Soon after the State Department promulgated its 2013 regulation explicitly excluding legal services from the ITAR's definition of brokering activities, Goldstein sought an advisory opinion from the Department pursuant to 22 C.F.R. § 126.9(a), asking whether six categories of services his firm provides were regulated or exempt. These services include advising clients on how to structure sales of defense articles, preparing sales contracts for these items, drafting technical-assistance agreements, advising on the availability of financing, advising on and preparing sales proposals, and corresponding and meeting with U.S. government officials. However, Goldstein offered the State Department no details about any past or contemplated transactions.

---

[1] The 2013 rule created this official advisory-opinion process. Prior to that rule taking effect, individuals could seek informal advisory opinions, but those opinions were "not binding on the Department of State." 22 C.F.R. § 126.9(a) (2012).

Goldstein asserts that, nearly a year after he requested an advisory opinion, the head of compliance at the State Department called him to say that the services described in his request would not be subject to Part 129 so long as his clients did not pay his firm a contingency fee or a commission. Relying on this advice, Goldstein withdrew his request. The State Department responded with a letter, advising Goldstein that his initial request and the phone conversation "lacked sufficient detail for the Department to make an *official* determination as to whether the activities discussed constituted brokering activities." J.A. 36 (emphasis added). The letter also referred him to the Frequently Asked Questions page on the State Department's website.

Shortly thereafter, Goldstein's firm filed suit in district court alleging that the State Department lacked constitutional and statutory authority to apply Part 129 to bona fide legal advice and seeking declaratory and injunctive relief to prevent the Department from requiring the firm to register as a broker. After the firm filed suit, the State Department sent Goldstein another letter. This letter, responding to the particulars of Goldstein's initial request for an advisory opinion, informed him that providing traditional legal advice would *not* qualify as a brokering activity—at least in situations where the foreign party had already been identified. The reason for this disclaimer, the Department subsequently explained, is that lawyers qualify as brokers when they work to find foreign counterparties to transactions for their clients; when the foreign party is already known, the risk that the lawyer is acting as a finder is eliminated.

The district court dismissed the firm's lawsuit for lack of standing. The court held that the complaint failed to allege with specificity that the law firm was engaged in "brokering activities" and what type of information the firm would need to

disclose that would run afoul of its duties of confidentiality. The court also observed that the firm's allegations of the State Department's threat of enforcement were speculative at best. In addition, the court held, for similar reasons, that the plaintiff's claims were not ripe. The plaintiff timely filed its notice of appeal, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

II

"We review a dismissal for lack of standing de novo." *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1273 (D.C. Cir. 2007). In reviewing a district court's grant of "a motion to dismiss for want of standing," we "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

The question before us is whether the law firm has standing to seek to enjoin the State Department from enforcing its regulations governing arms brokering. The firm has failed, however, to demonstrate its standing to seek pre-enforcement relief: it has not "suffered an 'injury in fact[]' that is (a) concrete and particularized and (b) actual or imminent . . . ." *Sabre, Inc. v. U.S. Dep't of Transp.*, 429 F.3d 1113, 1117 (D.C. Cir. 2005) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)). It is true that a plaintiff is not required "to expose himself to liability before bringing suit to challenge the basis" for an enforcement action by the government. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007). After all, a plaintiff can seek pre-enforcement review when the threat of enforcement is "sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2342 (2014). But there is something fundamental to a pre-enforcement challenge that is missing

here. There must be some desired conduct by the plaintiff that might trigger an enforcement action in the first place. *Cf. Abbott Labs. v. Gardner*, 387 U.S. 136, 154 (1967) ("[P]etitioners have sufficient standing as plaintiffs [because] the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the [agency]'s rule[,] they are quite clearly exposed to the imposition of strong sanctions."); *Susan B. Anthony List*, 134 S. Ct. at 2342 (explaining that pre-enforcement constitutional challenges to criminal statutes require plaintiffs to allege "an intention to engage in a course of conduct . . . proscribed by [the] statute," under which "there exists a credible threat of prosecution" (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979))). But here, we have no facts from which to conclude that the law firm risks incurring any liability by failing to register with the State Department. Indeed, Goldstein offers only vague and general descriptions of legal activities that the firm intends to undertake, none of which the State Department views as brokering, as the Department has made abundantly clear on its website and, more particularly, at oral argument before this court. Unsurprisingly, then, the State Department has shown no intention of enforcing the brokering regulations against Goldstein's law firm.

The 2013 regulation is straightforward: "[A]ctivities by an attorney that do not extend beyond the provision of legal advice to clients" are not brokering activities. 22 C.F.R. § 129.2(b)(2)(iv). The State Department understands all of the activities Goldstein has described to fit under that umbrella. As government counsel explained at oral argument, Goldstein has "given no indication that" his firm does anything "extend[ing] beyond" legal advice. Oral Arg. Tr. 30:3-10. In the State Department's view, then, there is no reason to believe that Goldstein's firm engages in brokering activities within the

meaning of Part 129. As long as the firm merely provides the legal services Goldstein describes, it faces no material risk of enforcement from the State Department. His firm therefore need not fear that it will have to disclose confidential client information or otherwise take steps to register.

True, an attorney like Goldstein *could* provide legal advice in a manner that constituted brokering, but the State Department has explained that the only such situation it has identified is when an attorney acts as a "finder" by, for example, helping clients to identify or locate foreign counterparties for proposed transactions. *See* Oral Arg. Tr. 38:10-14 (government counsel explaining that "the only example . . . that the Agency has been able to identify" of an attorney providing legal advice in a manner that implicates the brokering regulation involves the use of that "legal advice to steer a client towards a particular buyer or a particular seller").[2] The law firm simply has alleged no facts suggesting that it intends to act as a finder in any capacity. Moreover, Goldstein has expressly denied that his firm has any plan or desire to do so. *See* Appellant's Br. 24; *see also* Oral Arg. Tr. 38:14-16

---

[2] The State Department has explained how this might work in practice: "[F]or example, if someone comes to an attorney and they want to sell controlled explosives, and they ask the attorney to draft a general sales contract, that would be legal advice, [and] it would not constitute brokering. But if the same person came to the attorney, asked them to draft a general sales contract and the attorney happens to also represent a buyer in Pakistan and knows the buyer would want to buy these controlled explosives, and so the attorney recommends that the contract be translated into Urdu knowing that this is going to be the only likely buyer in the area, then the attorney might have used non-legal knowledge and tried to steer the seller towards the particular buyer even though he was engaging in legal advice." Oral Arg. Tr. 28:14-29:3.

(government counsel agreeing that "here the Plaintiff has explicitly disclaimed" acting as a finder).

The law firm's fear that it may be the target of Department enforcement seems to be based on a misunderstanding of the letter that Goldstein received from the State Department after his firm filed suit, in which the Department advised that Goldstein's proposed activities would be exempt "as long as" the foreign parties had already been identified. J.A. 40. Focusing on the "as long as" language, the firm argues that it must be subject to the requirements of Part 129 because it "often" provides these services *before* its clients have identified the foreign parties to proposed transactions. Appellant's Reply Br. 5 ("Defendants argue 'Plaintiff has not adequately alleged that he has engaged in or will engage in any conduct regulated as brokering activity[] under part 129.' . . . But Plaintiff has repeatedly stated that it regularly provides legal advice to clients on transactions where the clients have not identified all parties to the transactions.").

The letter, however, did not state that *all* legal advice on international arms transactions in which foreign parties are unidentified *necessarily* constitutes brokering. On the contrary, the "as long as" language in the State Department's letter simply creates a limited safe harbor: when an attorney provides ordinary legal services to a client in a situation where the foreign party has been identified, it is especially clear that the attorney is not helping to "find" the foreign party to the transaction—and thus not engaging in brokering activities. If the foreign party has not been identified, that merely leaves open the possibility that the attorney *may* be acting as a finder. But the State Department does not take the position that attorneys engage in brokering every time they provide legal advice relating to transactions with foreign parties not yet identified. *See* Appellees' Br. 27 ("[P]laintiff mistakenly

assumes that *all* advice on transactions in which the foreign parties are not identified constitutes brokering."). Rather, its view is that attorneys must go outside the bounds of providing proper legal counsel, and instead must actually undertake brokering measures. Contrary to Goldstein's argument, then, the plaintiff's stated intention to provide legal advice to clients on transactions where foreign parties are unidentified does not imply that it would face an enforcement action for failing to register under Part 129.

Goldstein may not have provided the State Department with enough information to make an official and binding determination that any *particular* transaction of his would fall outside the definition of brokering. *See* 22 C.F.R. § 129.9. But taken as a whole, the State Department's 2013 regulation explicitly removing the provision of legal advice from the definition of brokering activities, the Department's letters to Goldstein, and its representations at oral argument demonstrate that, in the Department's view, the firm is *not* subject to regulation as a broker based on the firm's proposed activities. Therefore, because the firm alleges that it intends only to provide legal advice and denies that it will act as a finder (or collect a contingency fee) in the process, it has not shown that it faces a meaningful risk that the State Department will seek to enforce Part 129 against it, either by forcing it to register or by penalizing it for failure to register. Without any credible threat of enforcement, the firm has no injury to speak of that would afford it standing to seek to enjoin enforcement of that regulation in court.

III

The order of the district court dismissing the action for lack of subject-matter jurisdiction is affirmed on the ground that the plaintiff faces no credible threat of enforcement and

therefore lacks the injury-in-fact necessary for Article III standing.

*So ordered.*