# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 20, 2019      Decided January 24, 2020

No. 18-5298

WOODHULL FREEDOM FOUNDATION, ET AL.,
APPELLANTS

v.

UNITED STATES OF AMERICA AND WILLIAM P. BARR, IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED
STATES,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01552)

———

*Robert L. Corn-Revere* argued the cause for appellants. With him on the briefs were *Ronald G. London*, *Lawrence G. Walters*, *Daphne Keller*, *David Greene*, *Aaron Mackey*, and *Corynne McSherry*.

*Catherine R. Gellis* was on the brief for *amici curiae* Floor64, Inc. d/b/a The Copia Institute, et al. in support of plaintiffs-appellants.

*Allen Dickerson* and *Zac Morgan* were on the brief for *amicus curiae* Institute for Free Speech in support of appellants.

*Brian M. Willen* and *Lauren G. White* were on the brief for *amicus curiae* Center for Democracy & Technology in support of plaintiffs-appellants.

*James Turner* was on the brief for *amici curiae* Freedom Network USA, et al. in support of appellants.

*Courtney Dixon*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Jessie K. Liu*, U.S. Attorney, and *Scott R. McIntosh*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance. *Ken Paxton*, Attorney General, Office of the Attorney General for the State of Texas, *Kyle D. Hawkins*, Solicitor General, *Karen L. Watkins*, Assistant Attorney General, *Steven Marshall*, Attorney General, Office of the Attorney General for the State of Alabama, *Leslie Rutledge*, Attorney General, Office of the Attorney General for the State of Arkansas, *Ashley Moody*, Attorney General, Office of the Attorney General for the State of Florida, *Chris Carr*, Attorney General, Office of the Attorney General for the State of Georgia, *Lawrence G. Wasden*, Attorney General, Office of the Attorney General for the State of Idaho, *Curtis T. Hill, Jr.*, Attorney General, Office of the Attorney General for the State of Indiana, *Derek Schmidt*, Attorney General, Office of the Attorney General for the State of Kansas, *Andy Beshear*, Attorney General, Office of the Attorney General for the Commonwealth of Kentucky, *Jeff Landry*, Attorney General, Office of the Attorney General for the State of Louisiana, *Maura Healey*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Keith Ellison*, Attorney General, Office of the Attorney General for

the State of Minnesota, *Jim Hood*, Attorney General, Office of the Attorney General for the State of Mississippi, *Timothy C. Fox*, Attorney General, Office of the Attorney General for the State of Montana, *Dave Yost*, Attorney General, Office of the Attorney General for the State of Ohio, *Mike Hunter*, Attorney General, Office of the Attorney General for the State of Oklahoma, *Alan Wilson*, Attorney General, Office of the Attorney General for the State of South Carolina, *Jason Ravnsborg*, Attorney General, Office of the Attorney General for the State of South Dakota, *Sean D. Reyes*, Attorney General, Office of the Attorney General for the State of Utah, *Mark R. Herring*, Attorney General, Office of the Attorney General for the Commonwealth of Virginia, and *Patrick Morrisey*, Attorney General, Office of the Attorney General for the State of West Virginia, were on the brief for the *amici curiae* States in support of appellees.

*Christopher J. Schmidt*, *Jonathan B. Potts*, and *Adam L. Shaw* were on the brief for *amicus curiae* National Center for Missing and Exploited Children in support of appellees and affirmance.

*David Boies* and *Karen A. Chesley* were on the brief for *amici curiae* Legal Momentum, et al. in support of defendants-appellees.

Before: ROGERS, GRIFFITH and KATSAS, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

Opinion concurring in part and concurring in the judgment by *Circuit Judge* KATSAS.

ROGERS, *Circuit Judge*: The district court dismissed a pre-enforcement challenge to a federal statute reflecting

Congress's continual goal of protecting minors online while promoting a free and open internet upon concluding that no plaintiff had demonstrated standing under Article III of the Constitution. Upon review, we hold for the following reasons that at least two of the plaintiffs, among the appellants before this court, have demonstrated their standing.

## I.

This case relates to Congress's ongoing effort to protect minors online while promoting a free and open internet. To this end, Congress passed the Communications Decency Act in 1996. The Act prohibited the transmission of obscene and indecent speech online in order to protect minors from being exposed to sexually explicit materials. 47 U.S.C. §§ 223(a), (d); *see generally Reno v. Am. Civil Liberties Union*, 521 U.S. 844 (1997). The Act also sought to protect the entities that publish the online speech of others in order "to promote the continued development of the Internet" and "to preserve the vibrant and competitive free market that presently exists." 47 U.S.C. § 230(b)(1)–(2). Section 230 shields interactive computer service providers from being treated "as the publisher or speaker" of any content that is posted by users of the site, *id.* § 230(c)(1), except where the published user content violates federal law, *id.* § 230(e)(1), including 47 U.S.C. § 223, relating to obscenity, and 18 U.S.C. § 110, relating to the sexual exploitation of children. It defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server . . . ." 47 U.S.C. § 230(f)(2).

In 2000, Congress enacted the Trafficking Victims Protection Act, codified as relevant at 18 U.S.C. § 1591, to prohibit the sex trafficking of children by force, fraud, or

coercion. In 2003, Congress authorized victims of sex trafficking to file civil actions. 18 U.S.C. § 1595.

When minor victims of sex trafficking sued publishers of online classified advertising related to sex trafficking, however the courts have held that Section 230(c)(1) precluded liability. For instance, when three victims of sex trafficking filed suit under Section 1595, alleging that Backpage.com, a publisher of online classified advertising, had structured its website to camouflage advertisements for sex traffickers, the district court ruled that Section 230 provided Backpage.com civil immunity from suit and dismissed the suit in its entirety. *Doe ex rel. Roe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 154, 159–61, 165 (D. Mass. 2015). The First Circuit Court of Appeals affirmed, observing the courts had interpreted Section 230(c)(1) broadly so that "lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone or alter content — are barred." *Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 18 (1st Cir. 2016) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997)) (collecting cases). To the extent victims of sex trafficking wished to bring civil suits against internet publishers such as Backpage.com that "tailor[] [their] website[s] to make sex trafficking easier," the First Circuit advised that "the remedy is through legislation" — amending Section 230 — "not through litigation." *Doe No. 1 v. Backpage.com*, 817 F.3d at 29.

In 2017, Congress passed the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA"), Pub. L. No. 115-164, 132 Stat. 1253 (2018), to narrow Section 230's scope and provide prosecutors with new tools to combat the sex trafficking of both minors and adults. FOSTA set forth the "sense of Congress" that Section 230 was "never intended to provide legal protection to websites that unlawfully promote

and facilitate prostitution and websites that facilitate traffickers in advertising the sale of unlawful sex acts with sex trafficking victims," *id.* § 2(1), 132 Stat. at 1253, and declared that "clarification" of Section 230 was needed to ensure that it would "not provide such protection to such websites," *id.* § 2(3). FOSTA narrowed the scope of immunity for interactive computer service providers, by providing that Section 230 has "[n]o effect on sex trafficking law," and shall not "be construed to impair or limit" civil claims brought under Section 1595 or criminal charges brought under state law if the underlying conduct would constitute a violation of Sections 1591 or 2421A. *Id.* § 4(a), 125 Stat. at 1254 (codified at 47 U.S.C. § 230(e)(5)). These amendments are retroactive, applying "regardless of whether the conduct alleged occurred, or is alleged to have occurred, before, on, or after . . . enactment." *Id.* § 4(b), 132 Stat. at 1254–55.

In a new provision, FOSTA proscribed "own[ing], manag[ing], or operat[ing] an interactive computer service . . . with the intent to promote or facilitate the prostitution of another person," punishable by a fine and imprisonment for not more than ten years. *Id.* § 3(a), 132 Stat. at 1253–54 (codified at 18 U.S.C. § 2421A(a)). This provision adopts the definition of "interactive computer service" in Section 230(f) of the Communications Decency Act. 18 U.S.C. § 2421A(a). When the underlying conduct "promotes or facilitates the prostitution of 5 or more persons" or when the person "acts in reckless disregard of the fact that such conduct contributed to sex trafficking," there is an enhanced penalty of imprisonment for not more than twenty-five years. *Id*. § 2421A(b). An individual injured by such an aggravated violation may sue for money damages. *Id*. § 2421A(c). It is an affirmative defense if "the promotion or facilitation of prostitution is legal in the jurisdiction where the promotion or facilitation was targeted." *Id.* § 2421A(e).

FOSTA also amended 18 U.S.C. § 1591, which prohibits the sex trafficking of children, to define "participation in a venture" to mean "knowingly assisting, supporting, or facilitating a violation" of the section. FOSTA § 5(2), 132 Stat. at 1255 (codified at 18 U.S.C. § 1591(e)(4)). Further, it amended 18 U.S.C. § 1595, which provides a federal cause of action for victims of sex trafficking, to authorize state attorneys general to file civil *parens patriae* suits when they have "reason to believe that an interest of the residents of that State has been or is threatened or adversely affected by a person who violates section 1591." FOSTA § 6(a), 132 Stat. at 1255 (codified at 18 U.S.C. § 1595(d)).

Upon enactment of FOSTA, a number of online service providers that enable interpersonal contact between users, like Craigslist and Reddit, immediately removed content and eliminated entire sections of their websites. Compl. ¶¶ 53–60. For example, Craigslist eliminated its Personals and Therapeutic Services sections and blocked the reposting of advertisements previously listed in the Therapeutic Services section to other sections. Compl. ¶¶ 55–56. In a public statement, Craigslist explained that it had taken these services offline because Congress had passed FOSTA and it did not want to risk liability and jeopardize its other services. Compl. ¶ 55. Craigslist added that it hoped to bring these services back some day. *Id.*

## II.

On June 28, 2018, appellants, who are various individuals and organizations purporting to engage in constitutionally protected speech on the internet, filed a pre-enforcement challenge to FOSTA, alleging harm to their online activities. Their complaint presented facial and as applied challenges to

FOSTA under the First and Fifth Amendments. The plaintiffs argued that (1) FOSTA's content-based restrictions are overbroad and fail to satisfy strict scrutiny; and (2) FOSTA's restrictions on speech are impermissibly vague. They also argued that FOSTA contains an unconstitutional *ex post facto* provision. They sought a preliminary injunction to enjoin the enforcement of FOSTA.

Four plaintiffs alleged concerns that their advocacy for, dissemination of information and resources to, or hosting of others' online speech about sex workers could be characterized a "promoting" or "facilitating" prostitution. These plaintiffs include a national human rights organization dedicated to sexual freedom, an international human rights organization, an advocate for sex workers, and a digital library of websites. Compl. ¶ 2. Specifically, Woodhull Freedom Foundation ("Woodhull") is an advocacy organization dedicated to protecting the right to sexual freedom. The organization works to support the health and safety of sex workers, a group that includes adult film performers, live webcam models, sexual wellness instructors, escorts, and prostitutes. Woodhull operates a website and uses a variety of online technologies to plan and host its annual multi-day Sexual Freedom Summit. Compl. ¶ 74. The Summit includes a sex worker track with workshops devoted to issues affecting sex workers. Compl. ¶¶ 67–73. Human Rights Watch is an international human rights monitoring organization that publishes reports, press releases, podcasts, videos and other online documents to advocate for the decriminalization of sex work and document abuses against sex workers. Compl. ¶¶ 86–89. Alex Andrews is an advocate for sex worker rights and a co-founder of several groups that advocate for the health, safety, and human rights of sex workers. In 2015, Andrews collaborated with advocates and sex workers to create Rate That Rescue, which is a sex worker-led, ratings and review website that provides a resource for sex

workers to learn more about the various organizations that provide services for them. Compl. ¶¶ 105–06. Notably, although Rate That Rescue was originally designed to provide information about support and rescue organizations, it has expanded to share information about all types of products and services that sex workers use — ranging from social media networks like Twitter, to website builders like Wix, to online payment processors like PayPal. Compl. ¶ 109. The Internet Archive, as its name suggests, stores and displays a vast amount of historical website data; it regularly archives web pages and maintains over 330 billion web pages spanning from 1996 to present. Compl. ¶¶ 121–23.

The remaining plaintiff, Eric Koszyk, is a licensed massage therapist and the owner of Soothing Spirit Massage. Compl. ¶ 93. He alleged that he suffered constitutional and monetary injuries when Craigslist, the online platform he used to disseminate his speech, shut down certain services in response to FOSTA. Compl. ¶ 2. Since 2007, Koszyk had posted weekly advertisements on Craigslist — in the Therapeutic Services section — in order to reach approximately 90 percent of his clientele. Compl. ¶¶ 94–95. After FOSTA became law, Craigslist removed his advertisements, shut down its Therapeutic Services section, Compl. ¶ 97, and blocked his attempts to re-post his advertisements to other sections of Craigslist's website. Compl. ¶ 98. Because he has been unable to post his advertisements on Craigslist, he alleged that he has had almost no clients and has been unable to provide a supplemental income for his family. Compl. ¶ 100.

The district court granted the government's motion to dismiss for lack of Article III standing. The district court ruled that plaintiffs Woodhull, Human Rights Watch, Andrews, and the Internet Archive lacked standing to bring a pre-enforcement

challenge to FOSTA, interpreting FOSTA not to apply to their described conduct and finding that they lacked a credible threat of prosecution. *Woodhull Freedom Found. v. United States*, 334 F. Supp. 3d 185, 196-204 (D.D.C. 2018). The district court stated that Section 2421A was "plainly calculated to ensnare only specific unlawful acts with respect to a particular individual, not the broad subject-matter of prostitution." *Id.* at 200. The district court noted FOSTA requires that a person act "with the intent to promote or facilitate 'the *prostitution of another person*,'" *id.* (emphasis in original), and the requisite *mens rea* establishes a "high bar," which "further narrows that provision's scope," *id.* at 201. Additionally, the district court ruled that Koszyk failed to establish redressability because his injury was the result of Craigslist's decision to remove his advertisements — a discretionary decision by a third party not before the court. *Id.* at 203.

## III.

To establish Article III standing, "a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus* (*SBA*), 573 U.S. 149, 157–58 (2014) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Pre-enforcement review is permitted where the threatened enforcement of a law is "sufficiently imminent." *SBA*, 573 U.S. at 159. "[A]n actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.* at 158. Rather, "a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* at 159 (quoting *Babbitt v. United Farm*

*Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). In *Babbitt*, the Court quoted its precedent for the proposition that individuals whose fear of prosecution is "imaginary or speculative[] are not to be accepted as appropriate plaintiffs." 442 U.S. at 298 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

Applying *Babbitt*, the Court in *SBA* analyzed whether the plaintiffs had established a sufficiently imminent threat in a three-part test. First, had the plaintiffs alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest." 573 U.S. at 161 (quoting *Babbitt*, 442 U.S. at 298). Second, was the intended future conduct "'arguably . . . proscribed by [the] statute' they wish[ed] to challenge." *SBA*, 573 U.S. at 162 (quoting *Babbitt*, 442 U.S. at 298). Third, was "the threat of future enforcement of the [challenged] statute . . . substantial." *SBA*, 573 U.S. at 164. Although lower "courts' willingness to permit pre-enforcement review is 'at its peak' when claims are rooted in the First Amendment," *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1135 (D.C. Cir. 2015) (quoting *Unity08 v. FEC*, 596 F.3d 861, 865 (D.C. Cir. 2010)), a plaintiff must still demonstrate more than a subjective chill to establish an injury-in-fact, *see, e.g., Seegars v. Gonzales*, 396 F.3d 1248, 1252 (D.C. Cir. 2005); *Am. Library Ass'n v. Barr*, 956 F.2d 1178, 1194 (D.C. Cir. 1992).

Upon *de novo* review of the dismissal of plaintiffs' complaint for lack of Article III standing, *see Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1273 (D.C. Cir. 2007), and upon accepting as true, as we must, all material allegations of the complaint and construing the complaint in favor of the complaining party, *Warth v. Seldin*, 422 U.S. 490, 501 (1975), we hold that Andrews and Koszyk have demonstrated their Article III standing. Given identical

claims by the other plaintiffs, the court need not decide whether additional plaintiffs have standing. *See Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 53 n.2 (2006); *Watt v. Energy Action Educ. Found.*, 454 U.S. 151, 160 (1981); *UAW-Labor Emp't & Training Corp. v. Chao*, 325 F.3d 360, 362 (D.C. Cir. 2003).

As an initial matter, the parties possibly disagree about whether at the motion to dismiss stage, a "plaintiff's non-frivolous contention regarding the meaning of a statute must be taken as correct for purposes of standing." Appellants' Br. 23 (quoting *Sandvig v. Sessions*, 315 F. Supp. 3d 1, 18 (D.D.C. 2018)). Appellants rely on *Information Handling Services, Inc. v. Defense Automated Printing Services*, 338 F.3d 1024 (D.C. Cir. 2003), where the plaintiff alleged that the government had violated statutory requirements, *id.* at 1026, and the court held that, at the motion to dismiss stage, the court "assume[s]" that the plaintiff "has read the statute correctly," *id.* at 1030. The government acknowledges that this is the correct standard "[w]hen a plaintiff's theory of injury is that the *defendant* has violated a statute and caused the plaintiff harm." Appellees' Br. 28 (emphasis in original). Under such circumstances, the court assumes that the plaintiff's legal theory is correct because, "[w]ere that not the case, [the court] would effectively be deciding the merits under the guise of determining the plaintiff's standing." *Information Handling Servs.*, 338 F.3d at 1030. But in a pre-enforcement challenge, which *Information Handling* was not, the government correctly points out that the court should look to *SBA* to determine whether the plaintiff has asserted an "imminent threat" that a statute will be enforced against the plaintiff because the plaintiff's conduct is "arguably . . . proscribed by a statute, and there exists a credible threat of prosecution thereunder," *SBA*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298). Upon applying the test in *SBA*, we

conclude that plaintiffs Andrews and Koszyk have Article III standing.

**A.**

Andrews has established an Article III injury-in-fact because she has alleged "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *SBA*, 573 U.S. at 159 (quoting *Babbitt*, 442 U.S. at 298). Her alleged conduct is "arguably affected with a constitutional interest," *SBA*, 573 U.S. at 161 (quoting *Babbitt*, 442 U.S. at 298), because Andrews' intended future conduct involves speech. Andrews operates a website that allows sex workers to share information. Compl. ¶¶ 106, 109. Her conduct is "arguably proscribed" by FOSTA because it is a crime to own, manage, or operate an "interactive computer service[]" with the intent to "promote or facilitate the prostitution of another person," 18 U.S.C. § 2421A(a). FOSTA does not define "promote" or "facilitate," nor does it specify what constitutes "prostitution," a term undefined by federal law. Nor are these terms limited by a string of adjacent verbs (such as advertises, distributes, or solicits) that would convey "a transactional connotation" that might narrow the statute's reach. *Cf. United States v. Williams*, 553 U.S. 285, 294 (2008).

The terms "promote" and "facilitate," when considered in isolation, "are susceptible of multiple and wide-ranging meanings." *Cf. id.* Because the verbs "promote" and "facilitate" are disjunctive, FOSTA arguably proscribes conduct that facilitates prostitution. The common meaning of facilitate is "'to make easier' or less difficult, or to assist or aid." *United States v. Rivera*, 775 F.2d 1559, 1562 (11th Cir. 1985) (quoting *United States v. Phillips*, 664 F.2d 971, 1032 (5th Cir. 1981)); *see also* BLACK'S LAW DICTIONARY (11th ed. 2019) ("To make the occurrence of (something) easier; to

render less difficult."); *cf. United States v. Bennett*, 1996 WL 477048, at *5 (9th Cir. Aug. 21, 1996).

Alternatively, the term "facilitate" could be interpreted "as a synonym for 'terms like 'aid,' 'abet,' and 'assist,'" in which case the term's meaning would be limited by the background law of aiding and abetting. *See* Concurring Op. 2 (quoting *Abuelhawa v. United States*, 556 U.S. 816, 821 (2009)). Even reading the term "facilitate" narrowly, Andrews has adequately alleged her intention to engage in a course of conduct arguably proscribed by FOSTA.

Andrews founded a sex worker-led, community forum called Rate That Rescue. Compl. ¶¶ 105–06. Rate That Rescue operates as a ratings and review website, hosting content created by both organizations that provide services to sex workers and the sex worker community. Compl. ¶ 106. Rate That Rescue allows sex workers to share information about products or services that they commonly use, such as payment processors, like PayPal. Compl. ¶ 109. Such discussions may, for example, facilitate prostitution by providing sex workers and others with tools to ensure the receipt of payment for sexual services. Because Andrews has alleged that she intends to host such discussions on her website, her intended conduct is arguably proscribed by FOSTA. And because Rate That Rescue has thousands of users, Compl. ¶ 116, Andrews' intended conduct is also arguably proscribed by the aggravated offense provision. *See* 18 U.S.C. § 2421A(b)(1) ("promotes or facilitates the prostitution of 5 or more persons").

The government maintains that even if the terms "promote" or "facilitate" can be read broadly in isolation, FOSTA cannot be read to encompass plaintiffs' intended conduct because advocacy and educational activities do not promote or facilitate any specific, unlawful instance of

prostitution. Appellees' Br. 21–22. It endorses the district court's interpretation that the text of Section 2421A is "plainly calculated to ensnare only specific unlawful acts with respect to a particular individual." *Woodhull*, 334 F. Supp. 3d at 200; Appellees' Br. 16–17. Further, the government suggests that individuals and organizations who advocate for the safety or well-being of sex workers do not act "with the intent" to facilitate a specific act of illegal prostitution, as required under Section 2421A. Appellees' Br. 19; *Woodhull*, 334 F. Supp. 3d at 201.

In short, the court need not read FOSTA to encompass advocacy or educational activities to hold that Andrews has standing. Because Andrews' website allows sex workers to share information about online payment processors like PayPal, Compl. ¶ 109, Andrews has alleged "some desired conduct . . . that might trigger an enforcement action," *see Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 851 F.3d 1, 4 (D.C. Cir. 2017); Compl. ¶ 109. That Andrews' intended conduct is unlike the intentional measures taken by Backpage.com to help online sex traffickers avoid detection by law enforcement, even assuming Backpage.com was a motivating consideration behind FOSTA's enactment, Appellees' Br. 17–19; *see* H.R. Rep. No. 115-572, pt. 1, at 3–6 (2018), does not mean that Andrews' conduct falls outside FOSTA's scope. FOSTA's text does not limit its scope to "bad-actor websites," *id.* at 3, or even to classified advertising websites.

On this record, there is also ample reason to conclude that the threat of future enforcement against Andrews is substantial. *SBA*, 573 U.S. at 164. The Department of Justice "has not disavowed any intention of invoking the criminal penalty provision," *Babbitt*, 442 U.S. at 302, against individuals who operate websites like Rate That Rescue. For instance, the

Department noted in a March 23, 2018, letter to the Office of Management and Budget that prosecutors can avoid any unconstitutional *ex post facto* problems by pursuing only prosecutable criminal conduct that takes place after FOSTA was enacted, yet never suggested that the terms "promote" and "facilitate" are to be narrowly understood to focus on classified advertising websites, like Backpage.com, and to exclude information sharing websites like Rate That Rescue. Further, the Department has repeatedly characterized Rate That Rescue as a website that "collects reviews of rescue resources for sex workers, such as housing, rehabilitation, and domestic-violence facilities," Appellees' Br. 18–19, and maintained that providing harm reduction information to persons engaged in sex work is different in kind from promoting or facilitating prostitution, Oral Arg. Recording at 21:10–21:58; 29:25–30:10 (Sept. 20, 2019). But the Department has yet to disavow any intention to prosecute an individual or organization that operates a sex worker-led forum about topics like PayPal. And although the Department has maintained in the instant litigation that plaintiffs' intended conduct is not proscribed by Section 2421A, "there is nothing that prevents the [Department] from changing its mind," *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 383 (2d Cir. 2000).

Furthermore, Section 2421A provides a private right of action for any person injured by an aggravated violation. 18 U.S.C. § 2421A(c). The Supreme Court has acknowledged that "[t]he credibility of [a] threat is bolstered" where "the universe of potential complainants is not restricted to state officials who are constrained by explicit guidelines or ethical obligations." *SBA*, 573 U.S. at 164. And Congress amended Section 230 to allow prosecutions under state law if the conduct underlying the charge would constitute a violation of Section 2421A. Twenty-one states emphasize that "the State need not wait for the Department of Justice to prosecute traffickers operating in

the State." Amicus Br. for the State of Texas, et al., 9. This amicus brief also cites pending legislation in Texas that would enact a local FOSTA. *Id.* at 9 n.3. These states have not disavowed any intention to prosecute individuals like Andrews.

**B.**

Koszyk has also established Article III standing. Where "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else*, . . . causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party." *Lujan*, 504 U.S. at 562 (emphasis in original). Koszyk's alleged injury-in-fact is, however, fairly traceable to the passage of FOSTA and "not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). Craigslist removed Koszyk's advertisements and "shut down its Therapeutic Services section in response to FOSTA's passage," and Koszyk alleges that he has not been able to post on Craigslist since, thereby drying up his client base. Compl. ¶¶ 97–100.

Additionally, Koszyk has met his burden to establish redressability. Where the requested "relief for the [plaintiff] depends on actions by a third party not before the court," the plaintiff "must demonstrate that a favorable decision would create 'a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Klamath Water Users Ass'n v. FERC*, 534 F.3d 735, 739 (D.C. Cir. 2008) (quoting *Utah v. Evans,* 536 U.S. 452, 464 (2002)). Koszyk alleges that Craigslist shut down the Therapeutic Services section on its website and began to remove his posts shortly after the passage of FOSTA. Compl. ¶¶ 97–98. Craigslist publicly announced that it attributed the closure of

this section to concerns about FOSTA, stating, "US Congress just passed HR 1865, 'FOSTA', seeking to subject websites to criminal and civil liability when third parties (users) misuse online personals unlawfully." Compl. ¶ 55 (quoting About FOSTA, CRAIGSLIST, https://www.craigslist.org/about/FOSTA (last visited Nov. 15, 2019)). Further, Craigslist stated that it was taking "craigslist personals offline" so as not to risk liability and jeopardize its other services. *Id.* Craigslist added: "Hopefully we can bring them back some day." *Id.* Given Craigslist's statements about the reason for the removal of those sections and its desire to bring them back, there is a "significant increase in likelihood" that Koszyk would obtain relief in the event that FOSTA is invalidated.

Accordingly, because Andrews and Koszyk have established their Article III standing to bring a pre-enforcement challenge to FOSTA — Andrews has alleged intended conduct that is arguably proscribed by FOSTA and the threat of future enforcement is substantial, while Koszyk has demonstrated that a favorable decision would create a significant increase in likelihood that he would obtain relief — we reverse the order dismissing the complaint for lack of subject-matter jurisdiction and remand the case to the district court for further proceedings.

KATSAS, *Circuit Judge*, concurring in part and concurring in the judgment: I agree with my colleagues on the bottom line. At the motion-to-dismiss stage of this case, plaintiffs Alex Andrews and Eric Koszyk plausibly alleged Article III standing to bring a pre-enforcement challenge to the Allow States and Victims to Fight Online Sex Trafficking Act of 2017 (FOSTA), Pub. L. No. 115-164, 132 Stat. 1253 (2018). I also agree with most, but not all of my colleagues' reasoning.

FOSTA's central provision makes it a crime to own, manage, or operate a website "with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. § 2421A(a). To secure standing, and to make FOSTA seem obviously unconstitutional, the plaintiffs advocate a sweeping construction of this provision. Here is their position in a nutshell: the phrase "promote or facilitate" is disjunctive, "facilitate" can mean "make easier," and FOSTA thus prohibits any online speech that makes prostitution easier. According to the plaintiffs, this includes several categories of speech in which they seek to engage—advocating for decriminalization; educating prostitutes about rights and risks; helping prostitutes obtain housing, medical attention, child care, or other essential services; and even internet archiving that incidentally sweeps up content related to prostitution. My colleagues neither adopt this construction of FOSTA nor follow it to its logical conclusion that all five plaintiffs have standing. But they do identify this construction as at least one possible reading of FOSTA. *Ante* at 13–14.

I would reject the plaintiffs' proposed construction, which ignores or overreads all the key statutory terms. To begin, FOSTA focuses not on prostitution as an abstract legal or policy matter, but on "the prostitution of another person"—a widely criminalized act involving the exchange of sex for money, *see, e.g.*, *Prostitution*, BLACK'S LAW DICTIONARY (10th ed. 2014). Moreover, in the criminal law, to "promote" prostitution means to pander or pimp—another common

offense that involves recruiting a prostitute or soliciting prospective customers. *See, e.g.*, *Pandering*, BLACK'S LAW DICTIONARY, *supra* ("The act or offense of recruiting a prostitute, finding a place of business for a prostitute, or soliciting customers for a prostitute.—Also termed *promoting prostitution*."). Likewise, in criminal statutes, "facilitate" need not mean "make easier." *Abuelhawa v. United States*, 556 U.S. 816, 819 (2009). To the contrary, as a synonym for "terms like 'aid,' 'abet,' and 'assist,'" it presumptively follows, and is limited by, the background law of aiding and abetting. *Id.* at 821. FOSTA's requirement of action with an "intent to promote or facilitate" prostitution confirms this presumption, by tracking almost verbatim the canonical formulation for the offense of aiding and abetting. *See, e.g.*, *Rosemond v. United States*, 572 U.S. 65, 74 (2014) (to give assistance "with the intent thereby to promote or facilitate commission of the crime" (quotation marks omitted)); 2 W. LAFAVE, SUBSTANTIVE CRIM. L. § 13.2 (3d ed. 2018) (same). This is not to suggest that FOSTA requires proof of a specific, completed act of prostitution, as would the offense of aiding and abetting prostitution. But FOSTA does require that the defendant own, manage, or operate a website with the specific intent to pander or otherwise abet the exchange of sex for money—not simply to advocate for, educate, or provide general assistance to persons who prostitute.

Properly construed, FOSTA does not arguably cover the advocacy, education, assistance, or archiving done by plaintiffs Woodhull Freedom Foundation, Human Rights Watch, and Internet Archive. Nor does it arguably cover Andrews's website insofar as it provides information about "support and rescue" organizations that either discourage prostitution altogether or seek to mitigate its harmfulness. *Ante* at 9. But as my colleagues explain, the website also provides prostitutes with information about "online payment processors like

PayPal," *id.*, which directly assists the exchange of sex for money, *id.* at 14. In context, such postings might support an inference that Andrews has the requisite intent to "promote or facilitate the prostitution" of someone besides herself. Because Andrews thus arguably engages in activities proscribed by FOSTA, I agree with my colleagues that she has standing to challenge it.

Finally, I agree with my colleagues' analysis of why Koszyk has standing, so I join Parts I, II, and III.B of the majority opinion, and I respectfully concur in the judgment.