**HELLER, EHRMAN, WHITE**
**& MacAULIFFE, et al.,**
**Appellees,**

v.

**Bruce BABBITT, Secretary of the**
**Interior of the United States,**
**et al., Appellants.**

**Nos. 92–5003, 92–5004.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 10, 1992.

Decided May 18, 1993.

Andrew C. Mergen, Atty., Dept. of Justice, with whom Vicki A. O'Meara, Acting Asst. Atty. Gen., Martin W. Matzen and Edward J. Passarelli, Attys., Dept. of Justice, Washington, DC, were on the brief for appellants Bruce Babbitt, Secretary of Interior and the U.S.

George Forman, with whom Paul Alexander and Barbara Karshmer, Berkeley, CA, were on the brief, for appellants Jesse Short, Susan M. Masten and Valerie Reed.

Roger E. Warin, with whom Ellen M. McNamara, Scott E. Ransick and M. Jean Anderson, Washington, DC, were on the brief, for appellees.

Before: MIKVA, Chief Judge, SILBERMAN and HENDERSON, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

This is an appeal from a district court judgment awarding attorneys' fees to three law firms from the "Settlement Fund" created by Congress pursuant to the Hoopa–Yurok Settlement Act ("HYSA"). *See* 25 U.S.C. §§ 1300i, *et seq.* The district court declined to consider whether it had jurisdiction over the case, and instead moved swiftly to the merits. The district court concluded that the law firms were entitled to a portion of the Settlement Fund as attorneys' fees under a "common fund" theory, and that the Secretary of the Interior's interpretation of HYSA prohibiting the release of such funds was

arbitrary and capricious. In the district court's view, although the plain language of HYSA did not provide for the payment of attorneys' fees, the law firms were clearly entitled to the fees under a common fund theory, and the Secretary was obligated to release the requested funds because an attorneys' fees lien was "implied" in the statute.

We reverse the district court's decision for lack of jurisdiction. The Claims Court has exclusive jurisdiction over all suits challenging the distribution of money and property under HYSA, including claims asserting improper distribution of monies from the Settlement Fund. *See* 25 U.S.C. § 1300i–11(a). While the law firms have filed a creative and novel complaint under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06, to get around the Claims Court's jurisdiction, an eager litigant may not circumvent a congressional grant of exclusive jurisdiction to the Claims Court, such as that contained in HYSA, by simply converting the suit into one for injunctive relief.

## I.

The appellees are three law firms that represented a group of Native Americans in a case called *Short v. United States,* 202 Ct.Cl. 870, 486 F.2d 561 (1973), *cert. denied,* 416 U.S. 961, 94 S.Ct. 1981, 40 L.Ed.2d 313 (1974). The *Short* litigation began in 1962 when the law firms agreed to represent the plaintiffs in their dispute against the United States over the distribution of revenues derived from the communal timber resources on the Hoopa Valley Indian Reservation. At that time, the Bureau of Indian Affairs ("BIA") was distributing the revenues derived from the communal timber resources solely to a minority group (30%) of the Reservation's population, the Hoopa Valley Tribe. The *Short* plaintiffs were members of the majority group on the Reservation who were not eligible for membership in the Hoopa Valley Tribe, and who were excluded from the disbursement of the revenues derived from the communal timber resources. The law firms signed a contract with the *Short* plaintiffs providing compensation for their representation in an amount "equivalent to six and one half percent [ ] of the value of all

individualized tribal assets ... [and] allotments of land when paid to or received by said Indians." The contract was approved by the Secretary of the BIA as required by 25 U.S.C. § 85.

In 1973, ten years after the initiation of the lawsuit, the Claims Court held that the *Short* plaintiffs were entitled to damages stemming from BIA's improper distribution of Reservation revenues. *Short,* 486 F.2d at 561. In response to this judgment, BIA began setting aside 70% of communal reservation income in an escrow account (the "70% escrow fund") pending final resolution of the *Short* litigation. The remaining 30% of communal reservation income was paid on a continuous basis to the Hoopa Valley Tribe. The Claims Court then began the process of determining which of the *Short* plaintiffs are "Indians of the Reservation" and thus entitled to damages. *See Short v. United States,* 228 Ct.Cl. 535, 661 F.2d 150, 158 (1981), *cert. denied,* 455 U.S. 1034, 102 S.Ct. 1738, 72 L.Ed.2d 153 (1982). Still, to this date, no final judgment has been entered in *Short.* Recently, however, the Claims Court has ruled that the law firms are entitled to interim attorneys' fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, for the work performed in the *Short* litigation.

In 1980, some of the *Short* plaintiffs filed a separate action in district court seeking to prevent the government's continued recognition of the Hoopa Valley Tribe as the exclusive governing authority of the trust lands and the resources of the "Square," the resource-rich portion of the reservation which is generally populated by members of the Hoopa Valley Tribe. That case, *Puzz v. United States,* No. C–80–2980–TEH, 1990 U.S.Dist. LEXIS 4433 (N.D.Cal. April 8, 1990), presented a distinct issue from that in *Short,* and the plaintiffs were represented by other attorneys. The court held in *Puzz* that no single tribe had exclusive authority over any part of the Reservation, and ordered BIA to assume management of the entire Reservation.

A month after the *Puzz* decision, Congress, "as the trustee and guardian of Indian tribes and property," passed HYSA to establish "a fair and equitable settlement of the

dispute relating to the ownership and management of the Hoopa Valley Reservation." S.Rep. No. 100–564, 100th Cong. 2d Sess., 22 (1988). HYSA overruled *Puzz* and partitioned the Hoopa Valley Reservation into separate Hoopa Valley and Yurok reservations. 25 U.S.C. § 1300i–1. In addition, to induce acceptance of the new arrangement, Congress transferred the 70% escrow fund, along with $10 million in federal appropriated funds and some small Yurok trust funds, into a statutory Settlement Trust Account—the "Settlement Fund"—for the purpose of compensating the Indians for their consent to the new distribution of land and resources. 25 U.S.C. § 1300i–3.

Pursuant to HYSA, individual Indians of the Reservation meeting certain criteria are to be placed on the Hoopa–Yurok Settlement Roll and designated to receive payments from the Settlement Fund. 25 U.S.C. § 1300i–5. One of the requirements for inclusion on the settlement roll is waiving one's individual rights, whatever they might be, against the United States regarding the distribution of land and resources under HYSA. *Id.* The amount to be paid to those on the settlement roll depends on which of HYSA's three tribal membership options a given individual qualifies for and chooses. The Hoopa and Yurok Tribes are also eligible for disbursements from the Settlement Fund, provided that they waive all Tribal rights against each other and the United States. 25 U.S.C. §§ 1300i–1(c)(4) and 1300i–6.

In the spring of 1991, appellee law firms sent two letters to the Secretary of the Interior claiming that they were entitled to attorneys' fees from the Settlement Fund to effectuate the contract executed in 1962 between the law firms and the *Short* plaintiffs. The law firms also claimed that they were entitled to a percentage of the payments due the Yurok tribe and other Indians on the Hoopa Valley Reservation because the law firms played a large role in the creation and preservation of a "common fund" from which payments to such individuals were to be made under HYSA.

On July 12, 1991, the Assistant Secretary of the Interior advised the law firms that the Department believed it had no discretion to withhold any amount from the Settlement Fund under HYSA for the payment of attorneys' fees. The law firms filed this suit against the Secretary on August 12, 1991, the day before the Secretary was scheduled to begin disbursing payments from the Settlement Fund. The law firms asserted in their complaint that the Secretary's refusal to set aside the attorneys' fees as requested was arbitrary, capricious, and contrary to section 3 of HYSA. 25 U.S.C. § 1300i–3. According to the law firms, the Settlement Fund would not have existed but for their efforts in the *Short* litigation, and therefore they are entitled to a portion of the Settlement Fund under a "common fund" theory. *See Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980) ("a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). The law firms alleged that the Secretary's interpretation of the Settlement Act would work a taking of their property in violation of the Fifth Amendment.

The district court issued a bench ruling granting the law firms' motion for summary judgment and denying the government's motion to dismiss for failure to join indispensable parties. The district court, leaping over the question of jurisdiction, ruled on the merits that the law firms were entitled to attorneys' fees from the Settlement Fund under a common fund theory and that the Secretary was obligated to release the requested funds because an "attorneys' fees lien" was "implied" in HYSA.

The district court's order requires the Secretary of the Interior to pay to the law firms as attorneys' fees an amount equal to: 1) 6.5% of the amount to be paid from the Settlement Fund to those individuals on the settlement roll who are plaintiffs in the *Short* litigation; 2) 25% of the amount to be paid from the Settlement Fund to those individuals on the settlement roll who are not plaintiffs in the *Short* litigation; and 3) 25% of the payment designated for the Yurok Tribe from the Settlement Fund. The district court also granted the three Yurok Indians' motion to intervene but denied their motion to dismiss. The Secretary of Interior and

individual *Short* plaintiffs promptly filed this appeal.

## II.

Appellants base their appeal of the district court's decision largely on the grounds that the law firms' suit is essentially a suit for "money damages" from the United States, even though there has been no express waiver of sovereign immunity. In their view, a suit for attorneys' fees is "certainly one for money damages," and therefore the waiver of sovereign immunity in section 702 of the APA does not apply. *See* 5 U.S.C. § 702. Further, appellants contend that the Settlement Fund is not only government property, but an "Indian trust fund" which has historically been afforded special protection from suits of this nature. In the alternative, appellants argue that even if section 702 of the APA provides the requisite waiver of sovereign immunity here, the law firms' suit still should fail because the Settlement Fund is not the result of the law firms' efforts in the *Short* litigation, but rather the work of Congress and other interested individuals who set out to address problems largely unrelated to the *Short* litigation.

In passing, appellants noted in their briefs that if the law firms' suit belongs anywhere, it belongs in the Claims Court. They explained that the Claims Court is most familiar with the law firms' efforts in the *Short* litigation, and that HYSA itself states that all claims arising under HYSA should be brought in the Claims Court.

At oral argument, we explored appellants' suggestion that this suit belongs in the Claims Court and accepted supplemental briefs addressing that particular question. We are now convinced that the Claims Court is not only the better forum for the law firms' suit, but the only forum. In our view, exclusive jurisdiction over the law firms' suit is clearly vested in the Claims Court.

Although the law firms attempt to frame this suit as an action arising under the APA, the crux of their complaint is that HYSA, as interpreted by the Secretary, infringes on their right to a portion of the Settlement Fund as attorneys' fees and thereby works a taking of their property in violation of the Fifth Amendment. Section 1300i–11(a) of HYSA specifically states:

> Any claim challenging the partition of the joint reservation ... or any other provision of this subchapter as having effected a taking under the fifth amendment ... or as otherwise having provided inadequate compensation *shall be brought* ... in the United States Claims Court.

25 U.S.C. § 1300i–11(a) (emphasis added). This section makes plain that Congress anticipated challenges to the distribution of money and property under HYSA, and decided to grant the Claims Court exclusive jurisdiction over all such disputes. Moreover, this section does not limit the jurisdiction of the Claims Court to suits involving certain parties or seeking certain relief. The statute makes clear that "any claims" challenging the distribution of money and property under HYSA "shall be brought" in the Claims Court.

If the law firms are correct that they have an equitable right to a portion of the Settlement Fund under a common fund theory, and that HYSA, as interpreted by the Secretary, would effect a taking of that right without just compensation, HYSA specifies that the law firms' only remedy is to sue the United States in the Claims Court for damages. The law firms resist this conclusion, arguing that a transfer of this case to the Claims Court would result in the total disbursement of the Settlement Fund. Once the Settlement Fund is disbursed, the law firms argue, they will never be able to recover their attorneys' fees. We find the possible disbursement of the Settlement Fund insignificant. Under the remedial scheme devised by HYSA, if the law firms have a right to attorneys' fees from the Settlement Fund under a common fund theory, then they are entitled to *damages* to the extent that HYSA has eviscerated that right without just compensation; they are not entitled to the specific monies held by the Secretary pending the outcome of this appeal.

Moreover, regardless of the law firms' reasons for seeking an alternative forum, the law firms may not, by creatively framing their complaint, circumvent a congressional grant of exclusive jurisdiction. As stated by the Claims Court in an analogous context:

[A] suit for money of the United States, over which the Court of Claims has exclusive jurisdiction, cannot be converted into a suit for injunctive relief, over which the Court of Claims has no jurisdiction, merely by naming a Government officer as defendant and praying for an injunction that the money of the United States, in its Treasury, be paid by the named defendant. A [c]ongressional grant of exclusive jurisdiction cannot be so easily circumvented.

*Hoopa Valley Tribe v. United States,* 219 Ct.Cl. 492, 596 F.2d 435, 443 (1979). Similarly here, where exclusive jurisdiction over claims arising out of the administration of HYSA has been vested in the Claims Court, the law firms may not evade that jurisdiction by filing a complaint in U.S. District Court praying for injunctive relief under the APA. Any claim that HYSA, as administered by the Secretary, has "effected a taking under the fifth amendment" or otherwise provided inadequate compensation "shall be brought" in the United States Claims Court. 25 U.S.C. § 1300i–11(a). HYSA's language on this point is clear and explicit. Notably, there is no exception to the Claims Court's exclusive jurisdiction for parties seeking attorneys' fees from the Settlement Fund under a common fund theory.

We also note that if there is a "common fund" in this case, it arose out of the earlier litigation in the Claims Court. The Claims Court is undoubtedly more familiar with the underlying merits of the law firms' claim, and would be better suited to resolve the difficult issues presented than the district court below. The Claims Court has far more insight into whether the Settlement Fund is, in fact, the result of the law firms' efforts in the earlier litigation, and is far better equipped to determine appropriate attorneys' fees.

In sum, the district court erred by skipping over the question of jurisdiction and adjudicating a claim that Congress expressly reserved for the Claims Court. We express no opinion, however, on the underlying merits of the law firms' suit. We hold only that if the law firms had a right to a portion of the Settlement Fund under a common fund theory, and HYSA, as interpreted by the Secretary, eviscerated that right, the law firms' remedy is to sue for damages under HYSA in the Claims Court. The disbursement of the Settlement Fund does not affect the law firms' ability to recover damages from the government. Regardless of whether the Settlement Fund is disbursed, the law firms are entitled to seek damages from the government if, in fact, the law firms were entitled to attorneys' fees under a common fund theory from the Settlement Fund.

*Reversed.*